UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JAN 2 0 2004

CIRCLE GROUP INTERNET, INC., an )
Illinois corporation, )
)                 Case No. 03-CV-09004
                Plaintiff, )
v. )                 Other Case No. 02-61082-CIV
)
ATLAS, PEARLMAN, TROP & BORKSON, )
P.A., ROXANNE K. BEILLY, CHARLES B. )
PEARLMAN and ELLA CHESTNUTT, )
)
                Defendants. )
_____ )

**FILED**

DEC 2 9 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF MOTION

**TO:   Counsel of Record**

On January 12, 2003 at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall

appear before the Honorable Judge Joan H. Lefkow, or any judge sitting in her stead, in Room

1925 or the courtroom usually occupied by her the United States Courthouse, 219 S. Dearborn

Street, Chicago, Illinois, and shall then and there present the Petition to Enforce Subpoena, a

copy of which is attached and was previously served upon you.

Respectfully submitted,

ATLAS, PEARLMAN, TROP &
BORKSON, P.A. ROXANNE K. BEILLY,
CHARLES B. PEARLMAN and ELLA
CHESNUTT

By: _____
One of Their Attorneys

Stacey L. Smiricky
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER, LLP
120 North LaSalle Street, Suite 2600
Chicago, Illinois 60602
(312) 704-0550

201313.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served on all counsel of record by U.S. Mail, postage prepaid, enclosed in an envelope properly addressed to:

**Jeffrey D. Barclay, Esq.**
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, Illinois 60606-6308

**Mary Leslie Smith, Esq.**
BUCHANAN INGERSOLL, PC
2100 Bank of America Tower
100 S.E. Second Street
Miami, Florida 33131

**Gary I. Blackman, Esq.**
LEVENFELD PEARLSTEIN, P.A.
Two North LaSalle Street, Suite 1300
Chicago, IL 60602

before the hour of 5:00 p.m. this ___ day of December, 2003.

Stacey L. Smiricky

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

201313.1

CIRCLE GROUP INTERNET, INC., an
Illinois corporation,

          Plaintiff,

v.

ATLAS, PEARLMAN, TROP & BORKSON,
P.A., ROXANNE K. BEILLY, CHARLES B.
PEARLMAN and ELLA CHESTNUTT,

          Defendants.

03C9004

(IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION)

FILED
DEC 2 9 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PETITION TO ENFORCE SUBPOENA

Defendants, ATLAS, PEARLMAN, TROP & BORKSON, P.A. ROXANNE K. BEILLY, CHARLES B. PEARLMAN and ELLA CHESTNUTT, pursuant to Federal Rules of Civil Procedure 30, 37(a)(1), (3) & (4)(A) respectfully request that this Court compel U.S. Bank f/k/a Firstar Bank and its employee Mario Valente to comply with the Federal Rules of Civil Procedure, and in support thereof, state as follows:

### INTRODUCTION

This matter is currently pending in the U.S. District Court for the Southern District of Florida, Fort Lauderdale Division. Rule 37 of the Federal Rules of Civil Procedure is titled "Failure to make Disclosure or Cooperate in Discovery; Sanctions." Fed. R. Civ. P. 37(a)(1) provides that "An application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be taken."

The Plaintiff in this case hails from Mundelein, Illinois and as a result, much of the Defendant's discovery efforts are undertaken in the state of Illinois.[1] As more fully described below, Defendants seek relief from the U.S. District Court for the Northern District of Illinois as proscribed by the Federal Rules of Civil Procedure in connection with Defendants subpoena for deposition served on Mario Valente (a U.S. Bank employee) in Mundelein, Illinois.

## ARGUMENT

1.      On November 10, 2003, Mario Valente (Branch Operations Manager at U.S. Bank f/k/a Firstar Bank) was served in Mundelein, Illinois with a subpoena duces tecum for deposition. (copy attached hereto as exhibit "A").

2.      On December 2, 2003, the deposition of Mr. Valente was commenced pursuant to said subpoena at the offices of the undersigned counsel in its Chicago, Illinois office.

3.      At the deposition, Mr. Valente was represented by Mr. Gary Blackman of the Levenfeld Pearlstein law firm.

4.      During the course of the deposition and while a question was pending, Mr. Blackman asked the witness if he "wanted to step out" of the room. In addition, Mr. Blackman coached the witness and stated that the witness "is allowed to step out at any point in time" as well as "talk to his counsel at any point in time even during while there's a question pending." (See attached deposition transcript, Exhibit "B" at pages 22 and 23)

5.      Mr. Blackman also instructed Mr. Valente not to answer specific questions without raising proper objections. (See Exhibit "B" pages 30-34)

---

[1] The discovery cut-off in this case is January 30, 2004 pursuant to order of the U.S. District Court for the Southern District of Florida.

- 2 -

6.    Mr. Blackman obstructed undersigned counsel's ability to fully complete the deposition by instructing Mr. Valente not to answer.

7.    On December 9 and 10, 2003, undersigned counsel telephoned Mr. Blackman regarding his improper objections and instructions to the witness as well as Mr. Valente's failure to answer proper deposition questions.

8.    Mr. Blackman is in flagrant violation of both the letter and spirit of the Rules of Civil Procedure pertaining to deposition testimony.

9.    Pursuant to F.R.C.P. 37 and Local Rule 37.2, undersigned counsel has made a good faith attempt to resolve the issue, but counsel's attempt to engage in such consultation was unsuccessful due to no fault of counsel.

**WHEREFORE**, Defendants, ATLAS, PEARLMAN, TROP & BORKSON, P.A. ROXANNE K. BEILLY, CHARLES B. PEARLMAN and ELLA CHESNUTT request that this Honorable Court compel Mr. Valente to complete the deposition with appropriate and complete responses, to sanction Mr. Blackman for his flagrant violations of the Federal Rules of Civil Procedure and to grant Defendants such other and further relief as this Honorable Court deems just and equitable.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200341.1

Respectfully submitted,

ATLAS, PEARLMAN, TROP & BORKSON, P.A. ROXANNE K. BEILLY, CHARLES B. PEARLMAN and ELLA CHESNUTT

By: _____
    One of Their Attorneys

Stacey L. Smiricky
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER, LLP
120 North LaSalle Street, Suite 2600
Chicago, Illinois 60602
(312) 704-0550

200341.1

Issued by the

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CIRCLE GROUP INTERNET, INC., an Illinois Corporation,**<br><br>**Plaintiff**<br><br>**vs.**<br><br>**ATLAS, PEARLMAN, TROP & BORKSON, P.A., ROXANNE K. BEILLY, CHARLES B. PEARLMAN and ELLA CHESNUTT,**<br><br>**Defendants.** | **SUBPOENA DUCES TECUM WITH DEPOSITION**<br><br>**(UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA FT. LAUDERDALE DIVISION)**<br><br>**Case No. 02-61082-CIV-Dimitrouleas**<br><br>Pending |

TO: Mario Valente, Branch Operations Manager or Person with the most knowledge to give testimony as to Items listed on Schedule A and Exhibit A attached hereto
Firstar Bank, n/k/a U.S. Bank
2000 South Lake Street
Mundelein, IL 60060

YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>120 North LaSalle Street, 26th Floor<br>Chicago, Illinois 60602-2412 | **Wednesday, November 19th @ 3:00 p.m.** |

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **\* \* \* SEE SCHEDULE "A" ATTACHED \* \* \***

| PLACE | DATE AND TIME |
|---|---|
| | |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorneys for Defendant | October 30, 2003 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
James M. Kaplan, Esq. and H. Steven Vogel, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3800 Bank of America Tower, 100 SE Second Street
Miami, Florida 33131    Phone: (305) 374-4400

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

If action is pending in district other than district of issuance, state district under case number.

145520.1



EXHIBIT
A

# PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SUBPOENA SERVED | | | |

| | | MANNER OF SERVICE |
|---|---|---|
| SERVED ON (PRINT NAME) | | |

| | | TITLE |
|---|---|---|
| SERVED BY (PRINT NAME) | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service true and correct.

Executed on _____      _____
             Date                                              Signature of Server

_____
                                             Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The Court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the

place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonable compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE "A"

### Topics to be Covered

1.  The accounts at the Firstar Bank held in the name of Circle Group Internet, Inc.

2.  The receipt by the bank of a certain draft dated April 10, 1999 in the amount of $10,000,000.00 payable to Circle Group Internet, Inc., a copy of which is annexed hereto.

3.  The policies, procedures, rules and regulations governing the receipt of checks and drafts for deposit and/or collection during 1999 at the Firstar Bank of Illinois.

# SCHEDULE "A"

## Documents to be Produced

1. Any and all documents pertaining to the deposit of the bank drafts dated April 10, 1999 and April 12, 1999, attached hereto as Exhibit A, to the account of Circle Group Internet, Inc., Reg D Funds 42266477, Account No. 071904779, as indicated on the second page of Exhibit A. Documents should include, but not be limited to, deposit slips, notice of insufficient funds, notice indicating funds "cleared", bank statements, and any other documents that reflect the transactional history and disbursement of the funds reflected on Exhibit A.

2. Any and all bank statements for Circle Group Internet, Inc., Reg D Funds 42266477, Account No. 071904779 for the time period January 1, 1999 through September 30, 2000.

3. Any and all procedures, rules, regulations governing acceptance of funds or deposits to or for accounts of Firstar Bank Illinois for the time period January 1, 1999 through December 31, 1999.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served on all counsel of record by U.S. Mail, postage prepaid, enclosed in an envelope properly addressed to:

**Jeffrey D. Barclay, Esq.**
TRESSLER, SODERSTROM, MALONEY & PRIESS
Sears Tower, 22nd Floor
233 S. Wacker Drive
Chicago, Illinois 60606-6308

**Mary Leslie Smith, Esq.**
BUCHANAN INGERSOLL, PC
2100 Bank of America Tower
100 S.E. Second Street
Miami, Florida 33131

**Gary I. Blackman, Esq.**
LEVENFELD PEARLSTEIN, P.A.
Two North LaSalle Street, Suite 1300
Chicago, IL 60602

before the hour of 5:00 p.m. this 10th day of December, 2003.

Stacey L. Smiricky

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

200341.1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE SOUTHERN DISTRICT OF ILLINOIS

3    FT. LAUDERDALE DIVISION

4    Case No. 02-61082 CIV-Dimitrouleas

5

6    CIRCLE GROUP INTERNET, INC.,          )

7    an Illinois Corporation,              )

8                    Plaintiff,            )

9        vs.                               )

10   ATLAS PEARLMAN, TROP & BORKSON,       )

11   P.A., ROXANNE K. BEILLY, CHARLES      )

12   B. PEARLMAN and ELLA CHESTNUTT,       )

13                   Defendants.           )

14

15        The deposition of MARIO VALENTE,

16   called for examination, taken pursuant to the

17   Federal Rules of Civil Procedure of the United

18   States District Courts pertaining to the taking

19   of depositions, taken before ANNETTE M. MONTALVO,

20   a Notary Public within and for the County of

21   Lake, State of Illinois, and a Certified

22   Shorthand Reporter of said state, at Suite 2600,

EXHIBIT
B

23    120 North LaSalle, Chicago, Illinois, on the 2nd

24    day of December, 2003, at 9:19 a.m.


AMM


☐                                                              2



1    PRESENT:

2

3        TRESSLER, SODERSTROM, MALONEY & PRIESS,

4        (Sears Tower, 22nd Floor,

5        233 South Wacker Drive,

6        Chicago, Illinois  60606,

7        312-627-4075), by:

8        MR. JEFFREY D. BARCLAY,

9            appeared on behalf of the Plaintiff;

10

11       WILSON, ELSER, MOSKOWITZ, EDELMAN &

12       DICKER, LLP,

13       (3800 Nations Bank Tower,

14       100 S.E. Second Street,

15       Miami, Florida  33131,

16       305-374-4400), by:

17       MR. JAMES M. KAPLAN,

18        appeared on behalf of the Defendants;

19

20

21

22

23

24

AMM

3

1    PRESENT:   (Continued)

2

3        LEVENFELD PEARLSTEIN,

4        (Two North LaSalle Street, Suite 1300,

5        Chicago, Illinois  60602,

6        312-476-7536), by:

7        MR. GARY I. BLACKMAN,

8              appeared on behalf of US Bank

9              and the Deponent.

10

11

12

13    ALSO PRESENT:   MR. GREG HALPERN.

14

15

16

17

18    REPORTED BY:   ANNETTE M. MONTALVO, CSR, RMR,

19                    CSR Certificate No. 84-3967.

20

21

22

23

24

AMM

☐                                                                    4

1                        (NOTE:   Mr. Greg Halpern was not

2                        present at the commencement of the

3                        deposition.)

4                        (WHEREUPON, the witness was duly

5                        sworn.)

6                        MARIO VALENTE,

7        called as a witness herein, having been first

8    duly sworn, was examined and testified as

9    follows:

10                    EXAMINATION

11   BY MR. KAPLAN:

12       Q.    Would you state your name and business

13   address for the record.

14       A.    Mario Valente.  2000 South Lake

15   Street, Mundelein, Illinois, 60060.  US Bank.

16   Title?

17       Q.    Yes.

18       A.    Assistant manager now.

19       Q.    Okay.  I'm going to ask you a few

20   questions this morning about one of the accounts

21   at First Star Bank of Circle Group.  If you don't

22   understand my question, let me know and I will

23   rephrase it so that you do.  I think the

24   proceedings this morning will be fairly short,

AMM

☐                                                                5

1    but if you need to take a break, let me know and

2    we'll do that.

3          Was there a time when you worked for

4     First Star Bank?

5          A.    Yes.

6          Q.    Okay.  And when did that cease,

7     approximately?

8          A.    Three years ago, four years ago.

9          Q.    Was First Star merged into US Bank?

10         A.    Yes.

11         Q.    Okay.  Are you familiar with an

12    account called Circle Group Internet?

13         A.    Yes, I am.

14         Q.    How did you become familiar with that

15    account?

16         A.    I worked at -- I was working at the

17    bank when they first opened the account.

18         Q.    Okay.  Do you know Greg Halpern?

19         A.    Yes.

20         Q.    How long have you known Greg Halpern?

21         A.    Since he opened the account.

22         Q.    Okay.  You did not know him before

23    that?

24         A.    No.

AMM

1      Q.    Okay.  Was Circle Group the largest

2  account at the branch where you worked?

3      A.    When you say "was," at the time or --

4      Q.    At that time.

5      A.    No.

6      Q.    Okay.  You have produced some

7  documents for me this morning pursuant to a

8  subpoena.  Let me just ask you first to identify

9  the subpoena.  I put it in front of you as

10  Exhibit 63.

11               (WHEREUPON, a certain document

12               was marked Deposition

13               Exhibit No. 63, for

14               identification, as of 12/2/03.)

15  BY MR. KAPLAN:

16      Q.    Is this the subpoena that you

17  received?

18      A.    Yes.

19      Q.    Okay.  And you brought me some

20  documents this morning.  You brought me some bank

21  statements.  I don't think we're going to look at

22    those.  And you brought me two other documents.

23    One document, front and back, a letter with a

24    check, and another document, a copy of the same

AMM

□                                                              7

1     check, but with some different handwriting along

2     the side.  We'll go through those in order.

3                    Why don't we mark the letter as

4     Exhibit 64.

5                         (WHEREUPON, a certain document

6                         was marked Deposition

7                         Exhibit No. 64, for

8                         identification, as of 12/2/03.)

9     BY MR. KAPLAN:

10        Q.    Is Exhibit 64 a copy of a letter that

11    you wrote?

12        A.    Yes.

13        Q.    Okay.  What is the purpose of Exhibit

14    64?

15        A.    To send the item in question to our

16    international collection department which was in

17    Milwaukee.

18         Q.    Which was where?

19         A.    In Milwaukee, Wisconsin.

20         Q.    Okay.  And why did you send the check

21    to Milwaukee?

22         A.    Because I could not process it at the

23    branch.

24         Q.    Why not?

AMM

☐

8

1          A.    Because it was a foreign draft which

2    cannot be processed through regular channels.  It

3    needs special attention so it has to go to our

4    collection department.

5          Q.    Do all foreign drafts have to go to a

6    collection department?

7          A.    Yes.

8          MR. KAPLAN:  Okay.  Let's mark as Exhibit 65

9    the back of the letter, which appears to be a

10    copy of a check, a certified mail slip, and some

11    handwriting.

Page 9

12            (WHEREUPON, a certain document

13            was marked Deposition

14            Exhibit No. 65, for

15            identification, as of 12/2/03.)

16    BY MR. KAPLAN:

17        Q.    Okay.  Does your handwriting appear on

18    Exhibit 65?

19        A.    Yes, sir.

20        Q.    Okay.  And you see toward the top of

21    the page there's a copy of what appears to be a

22    draft; is that right?

23        A.    Yes, sir.

24        Q.    How did you come into possession of

AMM

☐                                                              9

1    this check or draft?

2        A.    It was brought to me by Circle Group

3    for deposit, to be deposited into the account.

4        Q.    Okay.  Was it actually deposited in

5    their account?

6        A.    No.

7     Q.     Why not?

8     A.     Because being a foreign draft, I could

9  not send it through the regular processing and it

10  had to go through special handling through the

11  collection department.

12     Q.     So when someone brings you a check on

13  a foreign bank or a draft on a foreign bank, it

14  is never accepted for deposit, it is only

15  accepted for collection?

16     A.     Correct, unless it is Canadian check.

17     Q.     Canadian checks you accept for

18  deposit?

19     A.     Correct, which also may be different

20  from bank to bank.

21     Q.     Okay.  Who at Circle Group gave you

22  this check?

23     A.     That I don't remember.

24     Q.   Had anyone ever given you a check for

AMM

☐                                                    10

1    $10 million before?

2       A.    I would say two more times.

3       Q.    Okay.  It is a very large check, isn't

4  it?

5       A.    Yes, sir.

6       Q.    Okay.  Did you have any conversation

7  with the customer about the check?

8       A.    Don't remember precisely, but I'm sure

9  I did because I had explained to him that the

10  check could not be processed, I had to send it

11  for collection, you know, explain what was going

12  to take place with that particular check.

13      Q.    Okay.  So when the customer gave you

14  this check for $10 million, what kind of paper

15  did the customer get in return from you?  A

16  receipt, a deposit slip, an acknowledgment,

17  anything at all?

18      A.    Nothing.

19      Q.    The customer just gave you a check and

20  walked away with nothing?

21      A.    (Indicating).

22      MR. BLACKMAN:  Objection.  Asked and

23  answered.

24  BY MR. KAPLAN:

AMM

1      Q.    Is that typical?

2      MR. BLACKMAN:  Object as to what is

3   typical.  It is an incomplete hypothetical.

4         You can go ahead and answer.

5   BY MR. KAPLAN:

6      Q.   When you accept foreign drafts --

7      MR. BLACKMAN:  Are you withdrawing the

8   previous answer?

9      MR. KAPLAN:  Yes.

10     MR. BLACKMAN:  Okay.  You didn't state that

11  for the record.

12     MR. KAPLAN:  Okay.

13     MR. BLACKMAN:  The previous question is

14  withdrawn.  Okay.  Go ahead.

15     MR. KAPLAN:  Thank you.

16  BY MR. KAPLAN:

17     Q.   When you accept foreign drafts, except

18  on Canadian drafts, when you accept foreign

19  drafts and nonCanadian drafts, do you typically

20  give the customer some receipt or other evidence

21    that you have received a draft subject to

22    collection?

23        MR. BLACKMAN: Object as to relevance, as to

24    "typically," but you can go ahead and answer.

AMM

☐                                                    12

1    BY THE WITNESS:

2        A.    My personal experience, okay, not

3    saying bank procedure, my personal experience, I

4    typically make a copy of the item, stamp it, the

5    date that I received it, sign it that I received

6    it, and give that copy to the customer.

7    BY MR. KAPLAN:

8        Q.    Okay. I am going to ask you to look

9    at the subpoena because it has copies of the

10    front and back of the check. Can you point me to

11    anything on the check that is in your handwriting

12    or that you put on the check? I am talking about

13    the $10 million check that we have been talking

14    about.

15        A.    That I put on the check?

Page 14

16     Q.    Yes.

17     A.    No.

18     Q.    Going back to Exhibit 64, which is the

19     letter, looks like you sent this letter to a

20     woman named Niki in Milwaukee; is that correct?

21     A.    Right.

22     Q.    Okay.    And you would have done this on

23     or about April 17 of 1999?

24     A.    Correct.

AMM

☐                                                              13

1      Q.    After you transmitted the letter to

2      Milwaukee, what was the next thing you heard

3      about the status of the collection?

4      A.    Don't remember.    Probably nothing

5      because the -- I actually forgot all about it

6      until I received the subpoena.

7      Q.    Were the funds collected?

8      A.    No.

9      Q.    How do you know?

10     A.    Because I just looked at the statement

11    and there was never a deposit.

12        Q.    Okay.  So based on the fact that the

13    statements that you looked at don't show a

14    deposit, you concluded that the funds were not

15    collected?

16        A.    Right.

17        Q.    What became of the check?

18        A.    Don't know.

19        Q.    How was the customer advised that the

20    funds could not be collected?

21        A.    Most likely from the international

22    department.

23        MR. BLACKMAN:  As we discussed, I do not

24    want you to assume or guess because you are

AMM

☐                                                              14

1    under --

2    BY THE WITNESS:

3        A.    Don't know.

4        MR. BLACKMAN: -- because you are under

5    oath.  Only tell the attorney what you have

```
6      personal knowledge of and what you know to be

7      true.  If you don't know, it is okay to say you

8      don't know.

9      BY THE WITNESS:

10         A.    Okay.  I'm sorry.  Then --

11     BY MR. KAPLAN:

12         Q.    Your answer is you don't know?

13         A.    Right.

14         Q.    Okay.  At First Star Bank, if a check

15     drawn on a foreign bank, nonCanadian, is given

16     over to be collected, but it cannot be collected,

17     what was the custom and practice at the bank as

18     to how the customer was advised?

19         A.    I'm sorry, could you repeat that.

20         Q.    Certainly.

21             At First Star Bank in 1999, if a

22     customer gave you a foreign check on a

23     nonCanadian bank, you would turn it over to the

24     collection department, correct?
```

AMM

☐                                                        15

1    A.    (Indicating).

2    Q.    If the collection department could not

3    collect, what was the bank's practice as to how

4    the customer would be advised that his check

5    couldn't be collected?

6    A.    If I was informed that the item could

7    not be collected, then I would notify the

8    customer that the item cannot be collected.

9    Q.    Okay.    Suppose no one told you, do you

10   know what the bank would do from a collection

11   department or any other department?

12   A.    Would notify the customer.

13   Q.    Would the customer be notified in

14   writing?

15   A.    Don't know because it is not my

16   department, but --

17   MR. BLACKMAN:    Don't guess.    If you don't

18   know, you can say you don't know.    He is asking

19   you what you know about the bank's policies.

20   BY THE WITNESS:

21   A.    Okay.    Don't know.

22   BY MR. KAPLAN:

23   Q.    Okay.    Looking at Exhibit 65, the top

24   portion of the page, which is the check, do you

Page 18

1   see that the check is denominated in Rupees?

2        A.    (Indicating).

3        Q.    But the amount written in was in

4   dollars.  Do you see what I am talking about?

5        A.    Uh-huh.

6        Q.    That's a yes?

7        A.    Yes.

8        Q.    Okay.  So did the fact that the check

9   was denominated in one currency, but the amount

10  was written in another currency cause any problem

11  for you as the banker?

12       MR. BLACKMAN:  I'm going to object to the

13  term "for you as the banker."  I'm not sure what

14  that means.

15  BY MR. KAPLAN:

16       Q.    Okay.  Cause any problem for First

17  Star Bank?

18       A.    I don't know.

19       Q.    Okay.  After you mailed the check to

20    Niki in the collections department in Milwaukee,

21    did you ever follow up with her to see what the

22    status of the collection was?

23        A.    Don't remember because I don't have

24    any notes.  If I did, I would have some notes.


AMM

☐                                                    17


1         Q.    In 1999 was Circle Group one of your

2    larger accounts?

3         A.    No.

4         MR. KAPLAN:  Okay.  Mark this as 66.

5                        (WHEREUPON, a certain document

6                         was marked Deposition

7                         Exhibit No. 66, for

8                         identification, as of 12/2/03.)

9    BY THE WITNESS:

10        A.    Um --

11        MR. BLACKMAN:  There's no question pending.

12    If you want to talk to me about an answer that

13    you gave or something, we can go step out of the

14    room.  Do you want to do that?

Page 20

15       THE WITNESS: (Indicating).

16       MR. BLACKMAN: Okay. Let's take a break for

17  a minute.

18               (WHEREUPON, there was a conference

19               between the witness and counsel,

20               outside the presence and hearing

21               of other counsel and the court

22               reporter.)

23  BY MR. KAPLAN:

24       Q.   Okay. Do you need to supplement the

AMM

☐

18

1  record?

2       MR. BLACKMAN: Yes. Why don't you go ahead.

3  BY THE WITNESS:

4       A.   On your last question, was Circle

5  Group in 1999 one of the larger accounts of the

6  bank.

7       Q.   Yes.

8       A.   I said no.

9       Q.   Right.

10          A.     I would like to change that to,

11     really, I don't know because, you know, I don't

12     know the other accounts, all the accounts at the

13     bank.

14          Q.     Was Circle Group one of the larger

15     accounts that you personally dealt with?

16          A.     No.

17          Q.     Okay.  I put in front of you Exhibit

18     66, which is another copy of the check, but it

19     has some handwriting on it.

20                 Is that your handwriting?

21          A.     Yes, sir.

22          Q.     Okay.  It looks like there's a note in

23     the upper left-hand corner that there's $71 in

24     handling charges and $40 commission, do you see

AMM

☐                                                            19

1      that?

2           A.     Yes.

3           Q.     What is that?

4           A.     That's some of the charges that would

                                Page 22

5   have been involved in processing this draft as a

6   collection.

7        Q.    So the customer was charged for trying

8   to collect this?

9        A.    No.  It would have -- well, don't

10  know.  But usually when I pass a collection, I

11  always ask for fees involved, and I let the

12  customer know.  Whether it was charged, I don't

13  know.

14       Q.    Okay.  Did the customer agree to pay

15  these fees?

16       A.    Don't remember.

17       Q.    Did you personally return the

18  uncollected check back to Circle Group?

19       A.    Don't remember.

20       MR. KAPLAN:  Let's mark this as the next

21  exhibit.  It is going to be 67.

22                      (WHEREUPON, a certain document

23                      was marked Deposition

24                      Exhibit No. 67, for

1                      identification, as of 12/2/03.)

2    BY MR. KAPLAN:

3         Q.    I put Exhibit 67 in front of you.  Can

4    you tell me what that is?

5         A.    That's a letter that I prepared after

6    talking to Niki at our international department,

7    which I mailed the draft to her.

8         MR. BLACKMAN:  Are you looking at the right

9    letter?

10   BY MR. KAPLAN:

11        Q.    I don't think you are looking at the

12   right document.

13        A.    Okay.  I'm sorry.

14        Q.    Take a look at Exhibit 67.

15        A.    I'm sorry.  Sure.  Okay.

16        Q.    Okay.  Can you tell me what Exhibit 67

17   is?

18        A.    It is a letter signed by me stating --

19   confirming to Mr. Halpern that the balance was in

20   excess of $2 million.

21        Q.    Why did you send this letter to

22   Mr. Halpern?

23        A.    Don't remember.

                          Page 24

24      Q.    Did he ask you to do it?

AMM

□                                                              21

1       A.    Don't remember, but he must have.

2       MR. BLACKMAN:  Don't guess.  If you don't

3   remember, you don't remember.

4   BY THE WITNESS:

5       A.    I'm sorry.

6   BY MR. KAPLAN:

7       Q.    Do you actually remember preparing and

8   signing this letter?

9       A.    I don't remember.

10      Q.    Recognizing that it is a copy, does

11  that appear to be your signature?

12      A.    Yes.

13      Q.    Is it the practice of the bank to

14  confirm balances in writing to third parties if

15  the customer requests it?  The customer here is

16  Circle Group, right?

17      A.    Right.

18      Q.    Okay.  So what you're doing in this

19    letter is confirming that the balance in Circle

20    Group's account is more than $2 million; is that

21    right?

22        A.    Yes.

23        Q.    Okay. But you are not sending the

24    letter to Circle Group, you are sending the

AMM

◻                                                    22

1    letter to Mr. Halpern?

2        MR. BLACKMAN: I'm going to let him answer,

3    but I'm going to object. I think your previous

4    question assumes some facts not in evidence. He

5    says that he is not -- doesn't remember sending

6    the letter, doesn't remember the circumstances

7    under which he sent the letter to Greg Halpern,

8    who, I understand, was an officer, director and

9    owner of the company. So it very well --

10       MR. KAPLAN: If your objection --

11       MR. BLACKMAN: Let me finish.

12       MR. KAPLAN: I have sat back and let you

13    clutter the record with speaking objections. It

14      is quite improper.

15              MR. BLACKMAN:  That's fine.

16              MR. KAPLAN:  Make your objection, and I will

17      rephrase the question if it is necessary.

18              MR. BLACKMAN:  I will make my objection.  I

19      think that to ask him questions with respect to

20      whether or not it is proper to send something to

21      what you characterized as a third party assumes

22      facts that are not in evidence because he does

23      not recall under the circumstances who he sent

24      this to and for what reason.


AMM

☐                                                              23


1              MR. KAPLAN:  Thank you.

2       BY MR. KAPLAN:

3              Q.    Can you answer the question?

4              A.    I'm sorry, what's the question?

5              Q.    Okay.  Does the bank send

6       confirmations of balances to third parties if the

7       customer requests it?

8              A.    Don't know because don't know the

9      third party situation. I'm not really familiar

10     with the third party situation.

11     Q. Okay. Did you have any personal or

12     business relationship with Halpern or Circle

13     Group other than as a customer of the bank?

14     MR. BLACKMAN: Do you want to step out?

15     Okay.

16     MR. KAPLAN: I prefer that you not do that

17     while a question is pending.

18     MR. BLACKMAN: We are allowed to do it.

19     MR. KAPLAN: You are not allowed to do it

20     while a question is pending.

21     MR. BLACKMAN: We are allowed to step out at

22     any point in time under the --

23     MR. KAPLAN: Under what? Certainly not the

24     Federal Rules of Civil Procedure.

AMM

☐                                             24

1     MR. BLACKMAN: Yes, we are.

2     MR. KAPLAN: A question is pending. You are

3     coaching the witness.

 4      MR. BLACKMAN:  I am not coaching.  He can

 5    step out --

 6      MR. KAPLAN:  He can't talk to you.  He needs

 7    to answer.

 8      MR. BLACKMAN:  He can talk to me.  He is

 9    allowed to talk to his counsel at any point in

10    time even during while there's a question

11    pending.

12      MR. KAPLAN:  We are going to mark this for

13    ruling and pursue it.  I am not going to

14    obviously physically accost you.  This is

15    ridiculous.

16      MR. BLACKMAN:  Mark it for ruling.  Come

17    on.  Let's step out.

18                    (WHEREUPON, there was a conference

19                    between the witness and counsel,

20                    outside the presence and hearing

21                    of other counsel and the court

22                    reporter.)

23      MR. BLACKMAN:  Okay.  Can you repeat the

24    question back again, please.

AMM

1           (WHEREUPON, the record was read by

2           the reporter as requested.)

3      MR. BLACKMAN:  Go ahead.

4 BY THE WITNESS:

5      A.    Yes, I did personally buy stock in the

6 company.

7 BY MR. KAPLAN:

8      Q.    How many shares?

9      A.    A thousand at one time, a thousand

10 shares another time, and then I think another

11 thousand, so a total of 3,000 shares.

12     Q.    Okay.  Could it have been 4,000?

13     A.    Yes.  Actually, yes.  Yes, it is

14 4,000.

15     Q.    Did you hold those shares in your name

16 or with someone else?

17     A.    My name and my brother.

18     Q.    Your brother is Guisseppe?

19     A.    Right.

20     Q.    Do you still own the shares?

21     A.    Yes.

22     Q.    Have you tried to sell the shares?

23      MR. BLACKMAN:  At what point in time?

24      BY MR. KAPLAN:


AMM


◻                                                                26


1       Q.    Beginning in July of 1999?

2       A.    No.

3       Q.    How much did you pay for the shares?

4       A.    $20 for the first thousand, $5 for the

5       second and third batch -- I don't remember if I

6       bought two and two at $20 and two and two at $5.

7       MR. BLACKMAN:  You can just give him an

8       estimate of the total amount that you purchased.

9       He is not asking you to break it down.

10      BY THE WITNESS:

11      A.    Oh, I purchased -- I thought it was

12      30,000.  Approximately $30,000, $35,000.

13      BY MR. KAPLAN:

14      Q.    When you bought the shares, did you

15      have to fill out any papers?

16      A.    Yes, sir.

17      Q.    Okay.  Did you pay for the shares by

18    check?

19         A.    Yes, sir.

20         Q.    How did you -- how were you advised

21    that there were shares of Circle Group available

22    for sale?

23         A.    Greg kept talking about that he was

24    involved in this Internet company that he wanted

AMM

☐                                                          27

1    to take public.

2         Q.    And he offered to sell you shares?

3         A.    He mentioned to me if I could -- if I

4    knew of anybody that would be interested in the

5    shares.

6         Q.    And what did you tell him?

7         A.    On the spot I don't remember.   You

8    know, I told him that I would think about it

9    because this came after.   I didn't buy them when

10    he asked me.

11        Q.    Do you remember approximately when he

12    asked you?

13      A.      '97, '98.

14      Q.      Do you remember approximately when you

15      purchased --

16      A.      I think 2000, 2001.  It was over a

17      one-year period.  I can check -- I have the

18      information at home obviously.

19      MR. BLACKMAN:  I am going to -- I am going

20      to raise an objection.  I am going to let this go

21      on for a little longer, but I want to see what

22      the relevance of this is, number one.  Number

23      two, it is not within the scope of the topics set

24      forth on your subpoena to be covered, which, for

AMM

☐                                                          28

1       the record, are the accounts at First Star Bank

2       held in the name of Circle Group; the receipt by

3       the bank of a certain draft; and the policies and

4       procedures.  So --

5       MR. KAPLAN:  We will probably be done in

6       five minutes either way.

7       MR. BLACKMAN:  Well, I still maintain that

8    objection.

9         MR. KAPLAN:  That's fine.

10        MR. BLACKMAN:  And if there's any problem

11   with the next couple questions, we may just stop

12   this line, and if you want to come back and try

13   to reissue a subpoena to cover a topic that you

14   did not identify before, then you can do that if

15   you so choose.

16        MR. KAPLAN:  If you stop this deposition and

17   I am going to have to come back, it will only be

18   after the judge rules on sanctions.

19        MR. BLACKMAN:  That's fine.

20        MR. KAPLAN:  That's fine.

21   BY MR. KAPLAN:

22        Q.   Now, thinking about it, do you believe

23   that you had owned 4,000 shares of Circle Group

24   prior to the end of July of 1999?

AMM

□                                                        29

1         MR. BARCLAY:  Objection.  Asked and

2    answered.

3    MR. KAPLAN: No. He told me he believes he

4    purchased the stock in 2000 and 2001.

5    MR. BLACKMAN: No, he didn't.

6    MR. KAPLAN: Okay. Could you read the last

7    question and answer back before the colloquy?

8    Maybe I misheard him.

9    (WHEREUPON, the record was read by

10    the reporter as requested.)

11   BY MR. KAPLAN:

12   Q.    Were you explaining to me in that

13   answer that you thought you had purchased the

14   Circle Group shares over a one-year period around

15   2000, 2001?

16   A.    Yes.

17   Q.    Okay. So my follow-up question to you

18   is, is it possible that you would have completed

19   your purchase of 4,000 shares by July of 1999, or

20   does that seem wrong to you?

21   MR. BARCLAY: Objection. Asked and

22   answered.

23   BY MR. KAPLAN:

24   Q.    You can answer.

AMM

1          THE WITNESS:  I'm sorry?

2          MR. BARCLAY:  I am objecting asked and

3     answered.

4     BY MR. KAPLAN:

5          Q.    You are permitted to answer the

6     question.

7          A.    Oh, I'm sorry.  The question again?

8          MR. BLACKMAN:  If you are confused or you

9     don't understand the question, then you can ask

10    him to repeat it or rephrase it, and he will.

11    BY THE WITNESS:

12         A.    Yes.  Just repeat the question.

13    BY MR. KAPLAN:

14         Q.    Fine.

15              My question is, is it possible that

16    you actually had completed your purchase of 4,000

17    shares by July of 1999?

18         MR. BARCLAY:  I'll object again.

19    BY MR. KAPLAN:

20         Q.    You can answer.

21         A.    Well, I seem to remember the 2000,

                    Page 36

22    2001, so obviously not.  I mean, if I'm -- for

23    some reason I have 2000, 2001 in my mind.  I

24    don't think I had.

☐                                                                      31

1        Q.    Okay.  When Mr. Halpern asked you if

2    you knew anyone who would be interested in buying

3    shares, did you introduce him to anyone?

4        A.    I told people about it, yes.

5        Q.    Do you know of anyone who actually --

6    that you introduced who actually purchased shares

7    other than yourself?

8        A.    Yes.

9        Q.    Could you just tell me who?

10       MR. BLACKMAN:  I'm going to object to your

11    advising counsel as to the financial affairs of

12    other parties, and who, if anyone, purchased

13    other shares.

14       MR. KAPLAN:  Okay.  That's not a valid

15    objection.  It is not privileged.

16       MR. BLACKMAN:  I am instructing him not to

17    answer.

18        MR. KAPLAN:  I am telling you right now, if

19    you don't let him answer this question, I am

20    going to seek sanctions.  There is no proper

21    ground for that --

22        MR. BLACKMAN:  You can do whatever you

23    want.  This is beyond the scope of these topics.

24    I will seek sanctions for your inquiring

AMM

□                                                      32

1    questions of him that are not covered by the

2    topics listed on the subpoena.

3        MR. KAPLAN:  Let's go off the record for a

4    moment unless you haven't completed your

5    objection.

6        MR. BLACKMAN:  No, that's it.

7                    (WHEREUPON, discussion was had

8                    off the record.)

9                    (WHEREUPON, Mr. Greg Halpern

10                   entered the deposition

11                   proceedings.)

                    Page 38

12          MR. BLACKMAN:  For the record, I am not

13     going to allow the witness to continue to answer

14     any questions of a personal nature with respect

15     to any of his stock investments.  These topics

16     were not listed on the topics to be covered --

17     excuse me.  Topics -- this was not listed on the

18     topics to be covered with respect to the

19     subpoena.  The subpoena was also served on US

20     Bank, and he is here in his capacity as an

21     employee of US Bank, not individually.

22          So any further questions with respect

23     to his personal purchase of stock or any

24     discussions that he in his personal capacity had

AMM

☐                                                    33

1      with third parties with respect to the purchase

2      of the stock, we will not allow you to go into.

3          If you have any questions with respect

4      to the topics that you've listed, we can go back

5      into those.  If you feel that I am wrong, then we

6      can adjourn the deposition and you can file

7    whatever motion you deem proper.

8        MR. KAPLAN:  No, you've actually wasted

9    enough of my time.  I am going to go ahead and

10   take my deposition, and I will just tell you that

11   if you want to direct him not to answer on the

12   record, you go ahead and do so.  You are doing so

13   at your own risk of sanctions.

14       MR. BLACKMAN:  Okay.  Go ahead.

15       MR. KAPLAN:  That's fine.

16   BY MR. KAPLAN:

17       Q.    Does the bank have any policies or

18   procedures about employees investing in their

19   customers?

20       A.    Don't know.

21       Q.    Did you check with anyone at the bank

22   about that before you made your purchase?

23       MR. BLACKMAN:  I'm going to object.  I am

24   instructing the witness not to answer.  This is

AMM

☐                                                          34

1    not on the topics to be covered.

2      MR. KAPLAN:  The policies and procedures of

3      the bank?

4      MR. BLACKMAN:  This is not -- no.  You

5      covered the policies and procedures of the bank.

6      He answered he didn't know.  Now you are asking

7      him whether he personally in his individual

8      capacity spoke with anybody.

9      MR. KAPLAN:  Are you instructing him not to

10     answer?

11     MR. BLACKMAN:  I am.

12     MR. KAPLAN:  Okay.  That's fine.

13     BY MR. KAPLAN:

14     Q.    Okay.  Did you check the bank policies

15     at all before you decided to make your purchase?

16     MR. BLACKMAN:  Objection.  Assumes facts not

17     in evidence.  He has already testified he wasn't

18     aware of any bank policies.

19     MR. KAPLAN:  Now I am asking him if he

20     bothered to look.

21     MR. BLACKMAN:  Well, if he bothered to look,

22     then he would be able to tell you whether they

23     existed.

24     MR. KAPLAN:  Are you telling him not to

1    answer?

2        MR. BLACKMAN:   No.

3    BY MR. KAPLAN:

4        Q.    Did you check to see if there were any

5    bank policies?  You can answer.

6        MR. BLACKMAN:  You can answer if you

7    remember whether you checked or not.

8    BY THE WITNESS:

9        A.    No.

10   BY MR. KAPLAN:

11       Q.    Okay.  Did you receive a commission or

12   any other fee from Circle Group with respect to

13   the people you introduced?

14       MR. BLACKMAN:  I'm going to object and

15   instruct the witness not to answer for the

16   reasons I've already set forth.

17   BY MR. KAPLAN:

18       Q.    How many people did you introduce that

19   purchased shares of Circle Group?

20       MR. BLACKMAN:  I'm going to instruct the

21    witness not to answer this line of questioning.

22    You can ask your questions, and I am going to

23    have the same answer for the reasons I have

24    already set forth.


AMM

☐                                                    36


1         MR. KAPLAN:  Have you noted your appearance

2    on the record today?

3         MR. BLACKMAN:  Uh-huh.

4         MR. KAPLAN:  Is that yes?

5         MR. BLACKMAN:  Yes.

6         MR. KAPLAN:  I want to know where to send

7    the motion.

8              Okay.  We're done.

9         MR. BLACKMAN:  Okay.

10        MR. KAPLAN:  We're all done.  Thank you.

11             Actually, I'm done.  Jeff, do you have

12   any questions?

13        MR. BARCLAY:  No, I don't.

14        THE COURT REPORTER:  Signature?

15        MR. BLACKMAN:  We'll reserve.

Page 43

Vale1202

16          FURTHER DEPONENT SAITH NOT.

17

18

19

20

21

22

23

24


AMM

☐                                                                                    37



1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF ILLINOIS

3               FT. LAUDERDALE DIVISION

4           Case No. 02-61082 CIV-Dimitrouleas

5    CIRCLE GROUP INTERNET, INC.,          )

6    an Illinois Corporation,              )

7                    Plaintiff,            )

8        vs.                               )

9    ATLAS PEARLMAN, TROP & BORKSON,       )

10   P.A., et al.,                         )

Page 44

11          Defendants.              )

12               I hereby certify that I have read the

13     foregoing transcript of my deposition given at

14     the time and place aforesaid, consisting of Pages

15     1 to 36, inclusive, and I do again subscribe and

16     make oath that the same is a true, correct and

17     complete transcript of my deposition so given as

18     aforesaid, and includes changes, if any, so made

19     by me.

20                              MARIO VALENTE

21     SUBSCRIBED AND SWORN TO

22     before me this        day

23     of                  , A.D. 20   .

24          Notary Public


AMM

☐                                              38


1     STATE OF ILLINOIS )

2                       )

3     COUNTY OF L A K E )

4               I, ANNETTE M. MONTALVO, a Notary

5     Public within and for the County of Lake, State

Page 45

6    of Illinois, and a Certified Shorthand Reporter

7    of said state, do hereby certify:

8             That previous to the commencement of

9    the examination of the witness, the witness was

10   duly sworn to testify the whole truth concerning

11   the matters herein;

12           That the foregoing deposition

13   transcript was reported stenographically by me,

14   was thereafter reduced to typewriting under my

15   personal direction and constitutes a true record

16   of the testimony given and the proceedings had;

17           That the said deposition was taken

18   before me at the time and place specified;

19           That the reading and signing by the

20   witness of the deposition transcript was agreed

21   upon as stated herein;

22           That I am not a relative or employee

23   or attorney or counsel, nor a relative or

24   employee of such attorney or counsel for any of

AMM

39

1    the parties hereto, nor interested directly or

2    indirectly in the outcome of this action.

3              IN WITNESS WHEREOF, I do hereunto set

4    my hand and affix my seal of office at Chicago,

5    Illinois, this 3rd day of December, 2003.

6

7

8

9

10             Notary Public, Lake County, Illinois.

11             My commission expires 3/3/2007.

12

13

14

15    C.S.R. Certificate No. 84-3967.

16

17

18

19

20

21

22

23

24

AMM

☐                                                                              40

1                     I N D E X

2     WITNESS                         EXAMINATION

3     MARIO VALENTE

4           By Mr. Kaplan                    4

5

6

7

8                   E X H I B I T S

9     NUMBER                         MARKED FOR ID

10    Deposition Exhibit

11    No. 63.......................................... 6

12    No. 64.......................................... 7

13    No. 65.......................................... 8

14    No. 66.......................................... 17

15    No. 67.......................................... 19

16

17

18

19         INSTRUCTION TO THE WITNESS NOT TO ANSWER

Vale1202

|    |    | PAGE | LINE |
|----|----|------|------|
| 20 |    |      |      |
| 21 |    | 31   | 16   |
| 22 |    | 33   | 23   |
| 23 |    | 35   | 14   |
| 24 |    | 35   | 19   |

AMM

☐